IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:13CR070 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| | ) | |
| WILLIAM T. KOCH | ) | UNITED STATES OF AMERICA'S |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Now comes the United States of America, by its counsel, Steven M. Dettelbach, United States Attorney, and Michael A. Sullivan, Assistant U.S. Attorney, and submits the attached Sentencing Memorandum, which is incorporated herein by reference.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney
Northern District of Ohio

By: /s/ Michael A. Sullivan
     Assistant U.S. Attorney (0064338)
     Suite 400, U.S. Courthouse
     801 West Superior Avenue
     Cleveland, Ohio 44113
     Tel. No. (216) 622-3977
     Fax No. (216) 522-2403
     E-Mail: Michael.a.sullivan@usdoj.gov

**MEMORANDUM**

**I. INTRODUCTION**

Defendant awaits sentencing for his conviction thirteen counts of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a)&(e); one count of Extortion, in violation of 18 U.S.C. § 875(d); two counts of Identity Theft,  in violation of 18 U.S.C. § 1028(c)(3)(A) and 1028(b)(2);  one count of Receipt and Distribution of Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2); and one count of Unauthorized Distribution of Live Musical Performance, in violation of 18 U.S.C. § 2319A(a)(3). Defendant filed a sentencing memorandum, wherein he asserts that Defendant is not subject to a 5-point enhancement for pattern of activity; generally objects to the child pornography guidelines; and requests a downward departure and a downward variance, both based on Defendant's mental, emotional and physical conditions.  The Government asserts that the 5-point enhancement for pattern of activity is properly applied; the child pornography guidelines are valid; and a downward departure is prohibited.  For the reasons stated below, this Court should deny Defendant's request.

**II. STATEMENT OF FACTS**

Defendant admitted to the following facts in the plea agreement.  Between April 30, 2010 and January 11, 2013, Defendant was a resident of the Northern District of Ohio.  During that time, Defendant used multiple electronic devices to engage in interstate communication with several minor children, to receive and distribute visual depictions of minors engaged in sexually explicit conduct, and to sell the unauthorized recordings of live musical performances.  Such electronic devices included computers, an Apple Ipod, and Apple Ipad and an Apple Iphone.

During that time, Defendant engaged in all relevant communications from his home in the Northern District of Ohio.

From on or about December 19, 2010, through on or about December 20, 2010, Defendant contacted Minor # 1 via text messaging and attempted to coerce Minor # 1, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via text messaging.

On or about June 24, 2011, Defendant contacted Minor # 2 via text messaging and attempted to coerce Minor # 2, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via text messaging.

On or about September 9, 2012, Defendant contacted Minor # 3 through Skype and Facebook.  Defendant pretended to be a teenage girl and transmitted nude photos of a girl to Minor # 3, claiming such photos depicted Defendant.  Defendant then requested Minor # 3 to masturbate in front of a web camera so that the visual depiction of such sexually explicit conduct would be transmitted to Defendant.  Minor # 3 complied with Defendant's request.  Defendant used software to record the live transmission of Minor # 3 engaging in sexually explicit conduct.  Thereafter, Defendant instructed Minor # 3 to engage in sexual relations with his 10-year old brother in front of the web camera.  Defendant told Minor # 3 that if he refused to engage in sex with his brother in front of the web camera, Defendant would sent the images of Minor # 3 masturbating to all of Minor # 3's Facebook friends.  Minor # 3 did not comply.

From on or about December 19, 2010, through on or about September 13, 2012, Defendant, without lawful authority, created and used an email account in the name of Minor # 1, with the intent to commit a violation of Federal law.  Defendant used the fraudulent email account to register for and obtain a "Text Free" phone number, with which he could send text

messages. From on or about August 31, 2012 through on or about September 18, 2012, Defendant contacted Minor # 4 via text messaging, using the phone number he obtained with the fraudulent email account, on several occasions and attempted to coerce Minor # 4, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via text messaging. Defendant threatened that if Minor # 4 did not comply, Defendant would send a picture of a penis to all of Minor # 4's friends claiming it was a picture of Minor # 4's penis and that he would tell everyone that Minor # 4 was gay.

From on or about September 4, 2012 through on or about September 13, 2012, Defendant, pretending to be a female, contacted Minor # 5 via text messaging on several occasions and attempted to coerce Minor # 5, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via text messaging. Defendant threatened that if Minor # 5 did not comply, Defendant would make Minor # 5's life a "living hell." Defendant also threatened that he would tell all of Minor # 5's friends that Minor # 5 was gay and had engaged in sex with Defendant's brother.

From on or about April 3, 2011 through on or about May 13, 2011, Defendant, pretending to be a female, contacted Minor # 6 via Facebook and attempted to coerce Minor # 6, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via Facebook.

From on or about September, 2011 through on or about March, 2012, Defendant, pretending to be a female, contacted Minor # 7, a child actor, via text messaging, Skype and email on several occasions and attempted to coerce Minor # 7, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via Skype and email.

Defendant threatened that if Minor # 7 did not comply, Defendant spread the news that Minor # 7 was gay and had engaged in sex with another child actor.

From on or about January 14, 2012, through on or about September 13, 2012, Defendant, without lawful authority, created and used a Skype account in the name of Minor # 12, a child actor, with the intent to commit, a violation of Federal law.  On or about March 13, 2012, Defendant, using the fraudulent Skype account of Minor # 12, contacted Minor # 8, a child actor, via Skype and attempted to coerce Minor # 8, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via Skype. Defendant threatened that if Minor # 8 did not comply, Defendant spread the news that Minor # 8 and Minor # 12 had engaged in sex with each other.

On or about June 25, 2012, Defendant, pretending to be a female, contacted Minor # 9 via Facebook and attempted to coerce Minor # 9, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via Facebook.

From on or about August 31, 2012 through on or about September 1, 2012, Defendant, pretending to be a female, contacted Minor # 10 via text messaging on several occasions and attempted to coerce Minor # 10, to engage in sexually explicit conduct and to transmit a visual depiction of such conduct to Defendant via text messaging. Defendant threatened that if Minor # 10 did not comply, Defendant would make Minor # 10's life a "living hell."  Defendant also threatened that he would tell all of Minor # 10's Facebook friends that Minor # 5 was gay.

On or about October 2, 2011, Defendant pretended to be a teenage girl and transmitted nude photos of a girl to Minor # 11, claiming such photos depicted Defendant.  Defendant then requested Minor # 11 to masturbate in front of a web camera so that the visual depiction of such sexually explicit conduct would be transmitted to Defendant.  Minor # 11 complied with

Defendant's request.  Defendant used software to record the live transmission of Minor # 11 engaging in sexually explicit conduct.

On or about September 29, 2011, Defendant pretended to be a teenage girl and transmitted a video of a nude girl to Minor # 13, claiming such video depicted Defendant. Defendant then requested Minor # 13 to engage in sexually explicit conduct in front of a web camera so that the visual depiction of such sexually explicit conduct would be transmitted to Defendant.  Minor # 13 complied with Defendant's request.  Defendant used software to record the live transmission of Minor # 13 engaging in sexually explicit conduct.

From on or about April 30, 2010, through on or about December 2, 2010, Defendant had a peer-to-peer program installed on his computer.  Such program allowed Defendant to connect to other users' computers and allowed other users to connect to Defendant's computer.  During that time period, Defendant made numerous files available for others to download and downloaded numerous files from other users. Such files contained visual depictions of real minors engaged in sexually explicit conduct.  Defendant was aware of the nature and content of such files, which he made available for download.  On July 23, 2010, an undercover task force officer downloaded numerous files containing visual depictions of real minors engaged in sexually explicit conduct from Defendant's computer.  On December 3, 2010, members of the Lorain County Sheriff's executed a search warrant at Defendant's home and seized numerous computers and digital media.  A forensic examination of such computers and digital media revealed numerous images and videos depicting child pornography.

From on or about October 23, 2010, through on or about October 19, 2012, Defendant, without the consent of the performers involved, did knowingly and for the purpose of financial gain, sell and offer to sell DVDs of numerous theatrical musicals, such DVDs contained the

fixed sounds and images of the live musical performances. The theatrical musical sold and

offered for sale included:

Adam Lambert The Glam Nation Tour
Aida
Artist Descending a Staircase
Bat Boy: The Musical
Beauty and the Beast
Billy Elliot, The Musical
Bonnie & Clyde
The Boy Friend
Chess
Chicago
A Chorus Line
A Christmas Carol (Harnick/Legrand)
A Christmas Carol (Ahrens/Mencken)
A Christmas Story
City of Angels
Dracula the Musical
An Evening with Patti LuPone and Mandy Patinkin
Evita
Jekyll & Hyde
Jesus Christ Superstar
The Last Days of Judas Iscariot
Leap of Faith
Legally Blonde, The Musical
Les Miserables
The Little Dog Laughed
The Little Mermaid
Lost in Yonkers
Merrily We Roll Along
The Mountaintop
Next to Normal
The Phantom of the Opera
Promises, Promises
Rent
Rock of Ages
Shrek
Side Show
Singin' in the Rain
South Pacific
Spamalot
Spider-Man Turn Off the Dark
Spring Awakening
West Side Story

Wicked
Young Frankenstein

Additionally, the timeline found on pages 5-9 of defendant's Sentencing memorandum and the PSIR, paragraphs 27, 28, 31, 33, 35-42, detail other acts Defendant committed, which formed the basis of the counts to be dismissed. Additionally, Defendant was accused of raping a minor female in 2007 and again in 2008, as detailed in paragraph 47 of the PSIR. Additionally, Defendant charged tens of thousands of dollars on his father's credit card and, fraudulently stole money from his grandparents, who thought they were paying for his college education, as detailed on pages 6-7 of the forensic evaluation, prepared for the court.

**III. FIVE-POINT ENHANCEMENT FOR PATTERN OF ACTIVITY**

Defense asserts that the five-point enhancement for pattern of activity involving the sexual abuse or exploitation of a minor, pursuant to U.S.S.G. §2G2.2(b)(5), is not supported. The PSIR bases this enhancement on the Brunswick Hills Police Department report which details an allegation by a minor female, that Defendant raped her in 2007 and again in 2008, and again attempted to sexually assault her on another occasion in 2008. Defendant objects to the application of this enhancement because he denies the allegations and because he was not charged with the offenses.

According to U.S.S.G. §2G2.2, Application Note 2, "'Pattern of activity involving the sexual abuse or exploitation of a minor' means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct."

Clearly, the application of this enhancement does not require a conviction, and indeed, the 6th Circuit has affirmed the application of this enhancement in a case where the defendant was not charged with the conduct supporting the enhancement. United States v. Paull, 551 F.3d 516, 527-28 (6th Cir. 2009). In Paull, an individual had sent a written correspondence to the U.S. Attorney's Office alleging that the defendant, who was awaiting sentencing on child pornography charges, had molested him over twenty years earlier. The molestation was never reported to the police. The U.S. Attorney's Office forwarded the correspondence to the probation department and it was provided to the court at sentencing. The defendant denied the allegations, but the court, nonetheless credited them and applied the 5-level enhancement; which was later affirmed by the 6th Circuit.

While the police report referenced above supports the enhancement here, this court need not even decide the enhancement on the uncharged allegations, contained in the police report. This court can consider the conduct alleged in Counts 19-25, wherein Defendant was charged with the sexual exploitation of seven different unidentified minors. U.S.S.G. §2G2.2, Application Note 2 specifically states that, "'Sexual abuse or exploitation'" means any of the following: (A) conduct described in 18 U.S.C. … § 2251 …" Consequently, the conduct alleged in Counts 19-25 independently supports the application of the 5-point enhancement. Additionally, the application note also indicates that the enhancement can be based on conduct that "occurred during the offense." Therefore, the court can consider the thirteen separate counts of sexual exploitation of a minor to which Defendant entered a plea of guilt. Any two or more of these counts also independently supports the application of the 5-point enhancement.

## IV. DEFENDANT'S ATTACK ON THE GUIDELINES

Defendant relies upon a statistical analysis in support of his contention that certain enhancements are applied in 99.9% of child pornography cases (Def's Sent. Memo, Page26).

Essentially, Defendant contends that these enhancements are applied so often that they no longer constitute an enhancement but have become the norm, thereby resulting in unreliable sentences.

Defendant's argument that many enhancements contained in § 2G2.2 occur frequently, and therefore, should not be considered as enhancements, is flawed for two reasons.  Each of the enhancements is rationally based and is a reflection of either the Commission's institutional expertise or a Congressional mandate.  Any rational person would be hard-pressed to argue that images of prepubescent minors engaged in sexual acts are not more serious than images of fully developed, late-teen children or adults.  Obviously, sadistic, masochistic images and other depictions of sexual violence are more egregious than images depicting the lascivious exhibition of a person's genitals.  Each depiction represents a victim, and to increase the offense level for numerous images is clearly warranted under 6th Circuit precedent.  *See* United States v. McNerney, 636 F.3d 772 (6th Cir. 2011).

The flaw in Defendant's argument is his conclusion that if statistics show most offenders are subject to certain enhancements, then those enhancements should be absorbed into the base offense level.  The reality is that law enforcement rightly targets the most serious offenders and may not prosecute lesser offenders, so the statistics showing how often certain enhancements apply is not a reflection of how the offense is usually committed, but rather is a reflection of the success of law enforcement in identifying and apprehending those who commit the offense in the most serious way.

The second flaw in Defendant's argument is the fact that the Commission specifically considered the frequency of certain enhancements in setting the base offense level at 22:

> The Commission determined that a base offense level of level 22 is appropriate for trafficking offenses because, when combined with several specific offense characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images),

> the mandatory minimum of 60 months' imprisonment will be reached or exceeded in almost every case by the Chapter Two calculations.

App. C, Amendment 664.

This reference, by the Commission, conclusively rebuts Defendant's claim that the use of a computer enhancement should be ignored by this court. As the Commission clearly stated, they set the base offense level at 22, contemplating that almost every case would have an enhancement for use of a computer. This enhancement was mandated by Congress, so the Commission effectively built it into the base offense level by setting the base offense level lower than they normally would have for an offense carrying a mandatory minimum five year sentence.

In <u>United States v. Cunningham</u>, 680 F. Supp.2d 844, 852-53 (N.D. Ohio 2010), this court rejected the same argument Defendant now advances. Specifically, this court concluded that § 2G2.2 should not be discarded based on "the frequency of the application of these enhancements." <u>Id</u>. This court noted that "the frequency of the enhancements was expressly acknowledged [and considered] by the Commission when it set the base offense levels for these offenses." <u>Cunningham</u>, 680 F.Supp 2d at 852. This court, therefore, properly "afford[ed] little weight to the fact that some enhancements apply in nearly every instance, [as] [i]t is clear that the Guidelines have taken this factor into account." <u>Cunningham</u>, 680 F.Supp. 2d at 852. As such, "[t]he fact that certain enhancements apply ... frequent[ly] ... does not serve as a basis for negating the Guidelines." <u>Id</u>.

On appeal, in <u>United States v. Cunningham</u>, 669 F.3d 723, 732-33 (6th Cir. 2012), the 6th Circuit affirmed this court and concluded:

> The court also rejected Defendant's argument that the frequency with which the enhancements applied in other cases rendered them invalid. The district court's analysis of the § 2G2.2 enhancements generally, as well as their application to Defendant's crime, was sound. We recently held that a district court could not refuse to apply § 2G2.2 if the district court's basis for its disagreement was the

> fact that Congress adopted the § 2G2.2 enhancements directly instead of in accordance with its usual practice of allowing the Sentencing Commission to formulate Guidelines. United States v. Bistline, 665 F.3d 758, 761 (6th Cir. 2012). And in Bistline, we reaffirmed the authority of district courts to refuse to apply the § 2G2.2 enhancements on valid policy grounds so long as the basis for the rejection is adequately explained. Id.; *see* United States v. Herrera–Zuniga, 571 F.3d 568, 585 (6th Cir. 2009).
>
> Defendant advances a slightly different proposition than the one rejected in Bistline, arguing that § 2G2.2's purported lack of empirical grounding makes it unfit for deference. By now we have heard this argument on several occasions and have rejected it each time. See, e.g., United States v. Overmyer, 663 F.3d 862 (6th Cir. 2011); United States v. Dattilio, 442 Fed. Appx. 187, 193–94 (6th Cir. 2011); United States v. Campana, 429 Fed. Appx. 586, 592 (6th Cir. 2011); United States v. Pizzino, 419 Fed. Appx. 579, 585 n.7 (6th Cir. 2011); United States v. Kirchhof, 505 F.3d 409, 414 (6th Cir. 2007). We do the same here, reaffirming the principle that a district court is entitled to rely on the § 2G2.2 enhancements unless it has a reasonable policy basis for not doing so. See Bistline, 665 F.3d at 761; United States v. Brooks, 628 F.3d 791, 799 (6th Cir. 2011). Therefore, the district court's reliance on § 2G2.2 in fashioning Defendant's sentence was not unreasonable.

Cunningham, 669 F.3d at 732-33. Defendant makes the same argument. It fails.

Although district courts *may* choose to reject guideline sentences for child-pornography offenses simply due to policy disagreements with those guidelines, district courts are not required to do so. United States v. Cunningham, 669 F.3d 723 (6th Cir. 2012); United States v. Bistline, 665 F.3d 758 (6th Cir. 2012); United States v. Brooks, 628 F.3d 791, 799 (6th Cir. 2011). As the 6th Circuit recognized in Brooks, "the fact that a district court may disagree with a Guideline for policy reasons and may reject the Guidelines range because of that disagreement does not mean that the court must disagree with that Guideline or that it must reject the Guidelines range if it disagrees." Id. (emphasis in original) (citing United States v. Mikowski, 2009 WL 1546375, *5 (6th Cir. 2009) (unpublished); United States v. Janosko, 2009 WL 4609826, *3 (6th Cir. 2009) (unpublished)); *see also* United States v. Berringer, 2010 WL 3292991, *7 (6th Cir. 2010) (unpublished).

## V. MOTION FOR DOWNWARD DEPARTURE

Defendant moves for a downward departure, based on two specific offender characteristics, U.S.S.G. §§ 5H1.3, 5H1.4 and §5K2.0. Indeed, rather than authorizing it, §5K2.0 specifically prohibits such a departure in this case. §5K2.0(a) authorizes downward departures in cases involving "offenses other than child crimes and sexual offenses."

U.S.S.G. §5K2.0(b)(1) authorizes a downward departure in child crimes and sexual offenses only for mitigating circumstances that have been "affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, United States Code, taking account of any amendments to such sentencing guidelines or policy statements by act of Congress." Neither of the two specific offender characteristics proffered by Defendant are factors affirmatively and specifically identified as a permissible ground for departure. Certainly, this court can consider these specific offender characteristics in determining of a downward variance is warranted, but a downward departure is not authorized, in this case.

## VI. SENTENCING FACTORS

The following factors set forth in 18 U.S.C. § 3553(a) are relevant to the determination of what sentence is "sufficient" to meet the statutory purpose:

> **A. Section 3553(a)(1): The sentence should reflect the nature and circumstances of the offense and the history and characteristics of the defendant.**

The nature and circumstances of Defendant's offenses and his history and characteristics are disturbing; especially considering the time frame during which he offended, the number of people he victimized, the variety of criminal offenses he committed, the nature of the child

pornography he downloaded and made available, and the fact that he continued his behavior after multiple visits from law enforcement.

The charged conduct here spans 2010 – 2012, but Defendant's criminal behavior goes back to at least as early as April, 2007, as detailed in the Brunswick Hills Police Department report, mentioned previously.  The indictment alone details the Defendant's sexual victimization of 19 separate minors.  This does not include the scores of children depicted in the child pornography images and videos, whose victimization Defendant perpetuated.  Defendant also stole people's identities, threatened their reputations, profited from bootlegged Broadway plays, charged tens of thousands of dollars to his father's credit card and even stole from his own grandparents.

Defendant attempts to blame his conduct on a man he met at a Billy Elliot play, but the true timeline of his criminality refutes his claim.  The individual whom Defendant blames was interviewed by the FBI.  He admitted knowing Defendant and indicated that he met him in March, 2012.  The first Billy Elliot actor was victimized by Defendant in December, 2010, long before he met this other individual.  Additionally, Defendant's criminal conduct goes back further.  Aside from the sexual assault allegations from 2007 and 2008, the forensic examination of Defendant computer revealed that he was downloading and sharing child pornography at least as early as April, 2010.

Defendant had numerous chances to stop what he was doing, but instead chose to continue.  The Lorain County Sheriff's Department executed a search warrant in December, 2010 and took the computers from the home.  Instead of heeding that warning, defendant got a new computer and continued his criminality.  Defendant was interviewed by the FBI in August, 2011.  He admitted to sending an extortionate text message and was warned to stop.  He did not

– he increased his victimization of others.  The FBI executed a search warrant in September, 2012, and seized all the computers.  Defendant still did not stop, and indeed sent a Facebook request to the brother of one of the victims in November, 2012.  Defendant was a one man crime wave who only stopped when he was arrested.

>    **B.  Section 3553(a)(2)(A): The sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

This factor answers the need for retribution so that the punishment fits the crime and the defendant is punished justly.  *See* United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010). The Irey court cited the Senate Report regarding this provision:

> This purpose—essentially the "just desserts" concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct.  From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59). Id.

>    **1.  Billy Elliot Victims**

Defendant threatened the security and violated the privacy of countless children for his own sexual gratification.  These children who starred in a Broadway play were, in essence, stalked by Defendant.  He harassed them through text messages, attempted to extort sexually graphic photos of them, accessed at least one Facebook account without authorization, and stole some of their identities in an effort to play one off the other to achieve his goal of getting nude photos.  His behavior certainly caused distress to these children and their parents, who had no idea who was behind the text messages.

**2. Skype Victims**

Defendant took advantage of the sexual curiosity of teen-aged boys and the perceived anonymity of the Internet.  He duped these children into sexually performing in front of a web camera, while unbeknownst to them, not only was Defendant not who he pretended to be, but he recorded and preserved these children performing sexually.  Most disturbing was defendant's conduct with the Canadian victim, who he tried to extort into raping his own younger brother on web camera for defendant's perverse sexual enjoyment.

**3. Child Pornography Victims**

"Child pornography is, without qualification, a serious crime." United States v. Robinson, 669 F.3d 767, 776 (6th Cir. 2012).  The seriousness of child pornography is well-documented by the Eleventh Circuit in United States v. Pugh: "Congress repeatedly has stressed the terrible harm child pornography inflicts on its victims, dating back to its first enactment of child pornography laws in 1977.  Since that time, it has not only made detailed findings, but has expanded repeatedly criminal exposure for the possession of child pornography." United States v. Pugh, 515 F.3d 1179, 1197-98 (11th Cir. 2008).  "[e]very instance of viewing images of child pornography represents a ...repetition of their abuse."  Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248 § 501(1)(A) & (D), 120 Stat. 587, 623. Because child pornography is an extremely serious offense which harms victims irrevocably, Defendant's sentence must appropriately punish him for his participation in its consumption and distribution. Unfortunately, "the focus of nearly every argument regarding the child pornography Guidelines is on the harm to the *offender*, rather than the harm to the victim*.*" United States v. Cunningham, 680 F.Supp2d. 844, 863 (N.D. Ohio 2010).  Yet, "the harm to victims is permanent and ongoing." *Id.*   As the Cunningham court noted, it is "important to impose an appropriate

sentence to alert end users to the fact that receipt and distribution in and of itself is a heinous crime deserving of a severe punishment." *Id*.

The images and videos collected and distributed by Defendant renew the abuse of countless, nameless victims. These young victims carry the scars of this abuse, quietly and internally, for the rest of their lives. By continuing to download these abusive images and videos, Defendant has perpetuated the pain for these children.

    C.   <u>Section 3553(a)(2)(B)</u>: **The sentence must afford adequate deterrence to criminal conduct. General Deterrence is an Important Factor in Sentencing**

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is an important factor when considering an appropriate sentence. <u>Irey</u>, 612 F.3d at 1206, (citing <u>United States v. Ferber</u>, 458 U.S. 747, 760 (1982). In <u>Bistline</u>, the Sixth Circuit reversed the District Court's decision that deterrence was not a factor in child pornography cases, holding "The district court stated, 'general deterrence ... will have little [if] anything to do with this particular case.' That statement is inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'" <u>United States v. Bistline</u>, 665 F. 3d 758 at 767 (6th Cir. 2012), (citing <u>United States v. Camiscione</u>, 591 F.3d 823, 834 (6th Cir. 2010)).

"The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." <u>Ferber,</u> at 760. "It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand." <u>Osborne v. Ohio</u>, 495 U.S. 103, 109-10 (1990). "Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at

sentencing." United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007). "Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it." United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006).

The Seventh Circuit emphasized in United States v. Goldberg, the need for adequate deterrence is especially urgent in child pornography cases:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded- both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted), *cert. denied,* 128 S.Ct. 666 (2007).

### D. Section 3553(a)(2)(C): The sentence must protect the public from further crimes of the defendant.

This is the factor involving the incapacitation or specific deterrence of the defendant that the court is to consider. *See* Irey, 612 F.3d at 1210.  This Circuit and Congress have recognized that sex offenders have a high rate of recidivism. The Sixth Circuit stated in United States v. Richardson that there are, "long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from

prison." United States v. Richardson, 349 Fed. Appx. 38, 44 (6th Cir. 2009) (quoting, H.R.Rep. No. 108-66, at 49-50 (2003) (Conf.Rep.), *reprinted in* 2003 U.S.C.C.A.N. 683, 684.).

In this case, we know from the forensic evaluation that Defendant is in the High risk category for sexual recidivism. Defendant tries to distance himself from the finding that he suffers from Pedophilic Disorder by claiming that he offended against pubescent children and that some were as old as 17. Of course, some were as young as 11, and the undisputed fact is that Defendant was obsessed with the play Billy Elliot and the actors who portrayed the lead character. Billy Elliot is about an 11 year-old boy. Defendant's prognosis is characterized as fair, but clearly he is at high risk for recidivism. Even putting aside the forensic evaluation, it seems clear that anyone who continues to offend after each of three visits by law enforcement is a high risk to re-offend.

## VII. CONCLUSION

The 5-level enhancement for pattern of activity is proper, the child pornography guidelines are appropriate, and Defendant's Motion for a downward departure should be denied.

## CERTIFICATE OF SERVICE

I certify that on September 22, 2014, copy of the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Michael A. Sullivan
Assistant U.S. Attorney